lllll



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Frank D. Year
Assistant Securities Commissioner
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. O-1814
Re: Is the Century Life Insurance Company
authorized, under the laws of Texas,
to issue "surplus certificate bonds"
with the terms and conditions as set
out hereinafter?

Your letter of recent date requesting the opinion of this department touching the above matter, has been given our careful consideration.

The Century Life Insurance Company is an insurance corporation engaged in the business of selling life insurance in Texas under and by virtue of the provisions of Chapter 3, Title 78, Revised Civil Statutes of Texas, 1925, as amended. It desires to issue and sell to the public "surplus certificate bonds" containing the following terms and conditions:

"THIS CERTIFIES THAT the holder hereof, has paid into the SURPLUS of the CENTURY LIFE INSURANCE COMPANY, the sum of _____ Dollars ($_____) and the Company hereby agrees to pay interest thereon at the rate of five per cent per annum to the holder hereof from date until this certificate is retired in accordance with its terms, interest payable on the 1st day of July of each year.

"This certificate, together with similar certificates, shall be retired in the order issued out of surplus of the Company in excess of $250,000. and/or from the proceeds of certain

... APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

endowment coupons contained in policies issued
by the Co pany and assigned for that purpose.

"In accordance with unanimous resolution of
the stockholders of the Century Life Insurance
Company, it is agreed that no dividends shall
be declared or paid on the capital stock of the
Company until the principal of this certificate
and all interest due under it shall have been
retired and paid in full, and in event the Com-
pany should be liquidated the obligations under
this certificate shall be prior, and superior
claim to that of the stockholders.

"In accordance with the laws of the State of
Texas the amount of this certificate together
with the interest thereon shall be payable only
out of the surplus of the Company after provid-
ing for all the reserves and other liabilities
of the Company.

"This certificate is transferable only on
the books of the Company in person or by duly
authorized attorney upon its surrender properly
endorsed.

"IN WITNESS WHEREOF, the Century Life Insur-
ance Company has caused this certificate to be
signed by its duly authorized officers and its
corporate seal to be hereunto affixed this_____
day of _____, A. D. 19___.

_____    _____
        Secretary                  President."

There is no express statutory authority for
Chapter 3 Insurance Corporations to borrow money; neither
is there any statutory prohibition against the exercise
of such power. There is, of course, no statutory au-
thorization for the issuance of these proposed surplus
certificate bonds.

It is conceded, as a general proposition, that
private corporations may, without express statutory au-
thority, borrow money when necessary in the legitimate

ecurse of the corporate business. This rule would, it seems, likewise apply to an insurance corporation such as the Century Life Insurance Company.

We, therefore, concede, for the purposes of this opinion, that the Century Life Insurance Company has the power to borrow money when necessary in the legitimate course of its business, confining ourselves only to the question as to whether the proposed sale of such surplus certificate bonds would be a legitimate, lawful and authorized exercise of the general implied power to borrow money. On this question, there are no precedents in Texas.

The plan of issuing and selling to the public such surplus certificate bonds by the Century Life Insurance Company, whereby it may raise money, clearly is not the employment of the usual and commercial method of borrowing money. The transaction will not embrace an unequivocal obligation to return the property borrowed at regular intervals, or at a stated time; nor does it embrace a stated, or regular, or certain time for the payment of interest. It embraces only an obligation to repay the sums advanced out of the surplus of the company in excess of $50,000. "and/or from the proceeds of certain endowment coupons contained in policies issued by the company and assigned for that purpose", with the interest thereon payable only out of the surplus of the company. There is no power in the holders of such instruments to exact payment, either of principal and interest, at any stated time, or at any time, for that matter. The certificates vest in the owner a greater interest in the capital or property of the company, in case of liquidation, than the stockholder themselves possess; and the certificates further declare the repayment of the principal thereof with interest, when and if ever done, to be superior to the right of the stockholders to dividends. Furthermore, in the contract of subscription for such certificates, there appears this provision:

"On completion of this subscription it is also agreed that there shall be delivered to me without further cost____shares of the capital stock of the Century Life Insurance Company, fully

Hon. Frank D. Year, Page No. 4

paid and non-assessable, which said stock has
been deposited with the company for this pur-
pose."

It is clear beyond any question that the trans-
actions contemplated by the Century Life Insurance Com-
pany in the sales of these surplus certificate bonds
are not "loans" and the company is not "borrowing" as
these terms connote in their ordinary commercial and
legal sense. In just what relation to the company the
certificate holder would stand, in a legal sense, wheth-
er as a preferred stockholder, or as an annuity owner,
or something else, is immaterial; suffice for this opin-
ion, there will certainly not be created the usual
debtor-creditor, borrower-lender, relation which is
known and illustrated in ordinary commercial transactions
wherein money is loaned and borrowed.

It is our considered opinion that the principles
announced by Mr. Justice McKennan and Butler in the
case of Taylor vs. Philadelphia and Reading Railway Com-
pany, et al, and McCalmont vs. Philadelphia and Reading
Railway Company, et al, 7 Fed. Rep. 386, correctly state
the law applicable to the matter under consideration in
this opinion.

At pp 390 and 391 in the above case, Mr. Justice
McKennan says:

"Whatever power the defendant has in the prem-
ises can only be found in its general authority
to borrow money. Neither in the charter of the
defendant, nor in the special act which author-
izes it to sell bonds, which it may issue below
par, is anything contained to legalize the con-
tested proposition, unless it can be put on the
footing of a loan. Has it then this character?
I think plainly not. It does not propose to
create the relation of debtor and creditor be-
tween the defendant and the subscribers. The
money obtained by the defendant could not be re-
garded as borrowed, because that implies re-im-
bursement, and it is not demandable by the sub-
scribers or payable by the defendant. It has
not the essential and distinguishing qualities

Hon. Frank D. Wear, Page No. 5

of a loan. It contemplates a stipulation that
the subscribers, in consideration of the sums
paid-not lent-by them, shall be entitled to re-
ceive, in a remote and uncertain contingency, a
portion of the defendant's earnings, to be meas-
ured by a certain rate per cent, upon three times
the sums paid by them, and after that shall par-
ticipate with the common shareholders in the di-
vision of the residuary earnings. By what allow-
able definition of a loan or borrowing such a
transaction can be embraced I am at a loss to con-
ceive. Nor will the fact that it is to be evi-
denced by the sealed writing of the defendant
change its inherent character and bring it with-
in the range of a power to which it is not other-
wise referable.

"In one respect, and in one only, does the
plan proposed resemble a loan, and that is in the
result to be attained. They are both expedients
for raising money, but the method of accomplish-
ing this result is of the essence of the power
of the corporation. If its employment has not
explicit legal sanction it cannot be made avail-
able. • • • Authority to raise money by borrow-
ing does not imply the use of another and differ-
ent method of raising it, however well adapted
to the end it may be. • • • "

At pp 392 and 393, in concurring,Mr. Justice
Butler says:

"That the defendants have power to borrow
money is not questioned, and could not be. The
plaintiffs assert, however, that this is not a
proposition to borrow money, but a scheme to sell
stock. The defendants claim that it is strictly
a proposition to borrow - conceding that, if it
is not, but virtually is to sell stock, they have
no lawful authority to carry it out. Thus a vital
issue of law is sharply defined and presented.
It is one that neither requires nor admits of ex-
tended discussion. Every admissible definition
of the term borrow or loan, as applied to money
and commercial transactions, embraces an obliga-

Hon. Frank D. Wear, Page No. 6

tion to return the property borrowed. A loan
of money is universally understood to be the
delivery of a certain sum to another, on con-
tract for its return, generally with interest,
as compensation for its detention and use. To
call the payment of money to another, who is
to receive and permanently retain it as his own,
in consideration for an annual benefit or profit,
a loan, would seem to be a plain misuse of lan-
guage.

"There is no such thing known to commerce
or transactions in money as an irredeemable loan
in the sense here involved. Governments have
issued obligations without provision or stipula-
tion for repayment of the principal borrowed;
but such obligations are redeemable at pleasure.
Running, however, for an indefinite time, with
no power in the holder to exact payment, they
have come to be regarded as irredeemable, and an
investment in them is, therefore, treated and
described, not as a loan, but as the purchase of
an annuity or stock. Aside, however, from the
abstract considerations involved in defining the
term borrow or loan, the corporate powers of the
defendants to borrow money must be held to apply
only to such methods of borrowing as fall within
the ordinary sense of the term- as understood
by the community, and illustrated in commercial
transactions. Applying this test to the propos-
ition here under consideration, it becomes plain
that the transaction contemplated is not a loan.
* * * " (Underscoring ours)

Further, from the note to the above case, at p.
395 we quote:

" * * * In the case of Kent v. Quicksilver
Min. Co. 78 N.Y. 159, the company being in need
of funds, the stockholders adopted a by-law pro-
viding that stockholders who should surrender
their certificates and pay five dollars on each
share of stock should be entitled to the same
number of shares of preferred stock, which
should be entitled to 7 per cent interest, to be

paid out of the profits of the company, any surplus thereafter to be divided pro rata among common and preferred stockholders. The court held that it did not fall within the power to borrow money, and was ultra vires. Folger, J., says: 'It was not a borrowing. The idea of borrowing is not filled out unless there is in the agreement therefor a promise or understanding that what is borrowed will be repaid or returned.' Page 177. In these transactions, it is not by what name it is called, but what, in fact, the transaction is, that the courts consider. . . . "

The case of Synnott v. Tombstone Consolidated Mines Co., et al, 208 Fed. Rep. 251, involved bonds issued by a corporation by which it agreed to pay their face value with interest out of certain funds created from the net surplus earnings of the company and in the event of liquidation or dissolution, the obligation should attach to a l the funds and assets of the company, together with other provisions similar to the surplus certificate bonds under consideration herein. The court held that the instruments in question were not provable against the estate of the bankrupt corporation, for the reason that they created no fixed liability against it.

It is, therefore, our opinion that the general implied authority of the Century Life Insurance Company to borrow money would not legalize its proposed expedient for raising money; namely, the issuance and sale of surplus certificate bonds such as the sample which accompanied your letter.

As observed in the beginning of this opinion, the specific statutes of Texas relating to insurance corporations and particularly to those created under Chapter 3, Title 78, Revised Civil Statutes of Texas, 1925, as amended, do not expressly authorize such insurance companies to borrow money, nor do they prohibit the exercise of such power. It is significant, although not given controling force in this opinion, that the legislature in enacting Chapter 7, Title 78, Revised Civil Statutes of Texas, 1925, pertaining to mutual life insurance companies, did specifically authorize advancements to such

insurance companies by any person in a manner similar to the purchase of the proposed surplus certificate bonds to be issued by the Century Life Insurance Company. This authorization is found in Article 4816, supra, The fact that the legislature deemed it necessary to expressly authorize such Chapter 7 companies to receive advancements in this manner, definitely indicates that it conceived such power to be non-existent in insurance corporations created under and by authority of the statutes theretofore enacted by it. Chapter 3, of course, was originally enacted in 1909. This consideration certainly gives emphasis to the position we have taken in this opinion; namely, that, conceding the power in an insurance corporation in Texas to borrow money, the further power to issue surplus certificate bonds, as contemplated by the Century Life Insurance Company, cannot be legally implied.

You are, therefore, respectfully advised that it is the opinion of this department that the Century Life Insurance Company of Fort Worth, Texas, is not authorized under the laws of Texas, to issue surplus certificate bonds with the terms and conditions, and in the manner contemplated, as set out in this opinion and in your letter.

Trusting that we have adequately answered your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Zollie C. Steakley
Assistant

ZCS:ob

APPROVED JAN 26, 1940

_Gerald C. Mann_
ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN